SEARS, ROEBUCK & Co. et al. *v.* BURKE.

In Banc. Feb. 13, 1950.

No. 37382 (44 So. (2d) 448)

Wallace, Greaves & Wallace, for appellants.

T. J. Wills and Bidwell Adam, for appellee.

**Hall, J.**

Appellee brought suit against appellants, Sears, Roe-buck and Co., as owner, and Roy Ober, as manager, for the recovery of damages because of personal injuries alleged to have been sustained by her while a customer in a retail store at Gulfport, Mississippi, when a package fell against her back. The case was submitted to a jury and from a judgment in appellee's favor in the amount of $4,500 this appeal is prosecuted.

Appellants contend that they were entitled to a directed verdict and that consequently the trial court erred in submitting the case to a jury. In this connection the argument is pressed upon us that the package itself was of such nature that it was incapable of inflicting the injuries alleged, and further that the appellee was struck

by the package at a place in the store where customers were not invited and where she was forbidden to enter.

According to the evidence this store is approximately fifty feet in width and 150 feet in length. It faces West and fronts on a business street. The retail department occupies the west 127 feet of this space. In the east 23 feet there is a balcony which is elevated a distance of apparently 8 or 9 feet above the level of the first floor. In this balcony the company maintains its offices and customers who desire to purchase goods on credit or to make payments on credit accounts are required to go to this balcony, access being gained by stairs leading directly to the balcony from the center aisle of the store. The space underneath this balcony is a continuation of the first floor but is separated from the main retail department by a wall, and entrance thereto from the first floor is gained through an opening of double doors. Running directly east from these doors is an open aisle which leads to one of the rear doors opening onto a public alley behind the store. To the north of this aisle there are a freight elevator and mens rest rooms, access to all of which is gained from the aisle. To the south of and adjacent to this aisle there are first a small room known as the "Will Call" room, next an aisle approximately five feet in width and about twelve or fifteen feet in length running due south from the first mentioned aisle, next a room known as the "Package Department" with solid walls on the south and east sides but with a counter about 3½ or 4 feet high on the north and west sides, and, finally, to the east of this package department there is a small room, adjacent to the rear door, known as the mop room.

The door to the "Will Call" room opens into the last mentioned aisle which runs north and south. This room is maintained for the convenience of customers who have made cash purchases in the store and who desire to leave these packages with the company and call for them later, at which time the customer will enter the double doors from the main first floor of the store and walk to the east

along the aisle first mentioned and then turn to the south in the aisle last mentioned.

The "Package Department" is maintained for the convenience of customers who have selected merchandise which they desire to purchase on credit terms. If the customer does not have an established credit rating with the company he may select the goods which he desires to purchase and they are removed from the stock on display and placed in this package department awaiting a satisfactory credit report on the customer. When his credit is approved the customer is notified by the company and returns to the store and reports to the office in the balcony where an order is handed to the customer and the customer then takes this order to the package department, presents it to the employee there in charge, signs a receipt for the merchandise, and it is then delivered to him.

It is shown by the testimony of several witnesses for appellants, employees of the company, that the east and west aisle from the main store back to the package department and the space around the package department is constantly frequented by customers of the store during business hours.

The north and south aisle is about 12 or 15 feet in length and its south terminus is in a door leading into another room, completely walled off from the package department and "Will Call" room, which is used as a wareroom and storage department and is commonly known as the "Receiving Room". In front of the door leading from the north and south aisle to the receiving room there is a sign which says "Employees Only". There is also a door in the east end of the receiving room which opens into the aforesaid alley and through which merchandise is delivered by truck to the company and deposited in the receiving room.

A few days prior to April 23, 1948, Mrs. Joe Bell, a friend of appellee, had selected a set of silverware from the stock of appellant company, which she desired to

purchase on credit. Not having theretofore established a credit rating with appellant company she gave references and an investigation was made which resulted in appellant company mailing her a notice that her credit had been approved and that she could return to the company's office and obtain the silverware which she had selected. On said date Mrs. Bell asked appellee if she wished to go to appellant company's store with her, and appellee replied that she desired to purchase some paint from appellant company for the purpose of repainting her porch furniture and would be glad to go with her. Mrs. Bell accordingly drove to appellee's home and they then went to appellant company's store, entered the front door, walked directly east down the center aisle and up the steps to the office in the balcony. Appellee testified that they had decided that they would first attend to the completion of Mrs. Bell's purchase of the silverware and that appellee would then select the paint which she desired. At the office in the balcony Mrs. Bell was handed a slip or order and was directed to go back down the stairs and turn to the right and go to the package department where her silverware would be delivered to her. In accordance with these instructions she went to the package department and appellee went with her. While they were standing at the counter in the package department a package toppled over and struck appellee in the back, whereupon she screamed and fell to her knees.

The package which struck her was a cardboard carton containing a floor polishing machine. The carton measured 8½ inches deep, 15½ inches wide, and 56½ inches long. The machine therein consisted of an electric motor, with polishing attachment, and a handle. Its entire weight was 39 pounds. Naturally this weight was not evenly distributed; in fact nearly all of it was in one end of the carton. The heavy end of the carton had been damaged, probably during shipment, and it was difficult to stand this carton on end with the heavy end on the floor. Another customer had selected this polishing machine

from the stock in the main store and had made application to purchase it on credit terms. It had been sent from the main store back to the package department to await approval of its purchaser's credit rating, but the employee in charge of it, for some reason unexplained in the record, had stopped about five feet away from the package department and had stood the package on end at or near the corner of the ''Will Call'' room. The record is silent as to how long it had been there. At the time it fell and struck appellee some of the company's employees were engaged in moving an automobile motor, resting upon a ''dolly'' or floor truck with wheels, along the east and west aisle eastwardly past the freight elevator and appellants admit that the vibration of the floor caused by the moving of the automobile motor was probably the factor which caused the package to fall and strike appellee. Regardless of whether this was a cause which contributed to the falling of the package, it is undisputed that it was difficult to stand it on end with the heavy end down and furthermore that it was difficult to stand it on end with the light end down, and there was danger, in either event, of its toppling over.

Considering the contention of appellants that the appellee had no business to transact at the package counter but was only accompanying her friend to that portion of the store, it is nevertheless undisputed that customers of the store were constantly going to and from that department and its business with customers at that department was of such magnitude that it kept an employee there at all times. In the case of S. H. Kress & Co. v. Markline, 117 Miss. 37, 59, 77 So. 858, 865, Ann. Cas. 1918E, 310, this court said: ██ █ ''An invitee in a store is not to be too circumscribed as to his movements while waiting for a clerk to exhibit goods. He has a right to inspect goods and frequent places used by other patrons of the store and provided for their use by the storekeeper.'' ██ █ In this case it is undisputed that appellee entered the store for the purpose of purchasing paint. She was

lawfully therein on business with appellant company and under the rule announced in the Markline case she was entitled to go with her friend to the package department. In so doing she was an invitee and not a mere licensee as contended by appellants. Appellants owed her the duty of exercising reasonable care to keep in a reasonably safe condition the place where patrons of the store were invited to go, and whether they failed in that duty is a question for decision by a jury. Appellant's authorities respecting the duty of a storekeeper to those customers who wander into shipping rooms, warerooms, and other places not frequented by customers, have no application here for it clearly appears from the record that appellee was approximately 12 or 15 feet north of the door to the wareroom when she was injured and that she never at any time entered the wareroom or went beyond the sign indicating that that space was reserved for employees only.

 With reference to the contention that the package was incapable of inflicting the injuries of which complaint is made, the appellants sought to show that the package was standing with the heavy end down, one of its employees tending to establish that fact, and it is argued that the light end of the package struck the appellee and could not possibly have caused any serious injury. As against this argument the fact remains undisputed that the package did strike her, that she instantly screamed and fell to her knees, that she was given ammonia and placed in a chair where she rested about fifteen minutes and then went directly to one of the company's doctors who examined her, strapped her back with adhesive plaster, and directed her to sleep only upon boards placed in her bed. We are of the opinion that the fact that appellee was struck in the back with such force as to cause her to spontaneously scream and fall to her knees is sufficient to make a question for decision by the jury as to whether she was struck with the heavy end of the package.

■■ ■ Appellants also assign as error the granting of an instruction to appellee, the main vice of which they contend lies in its failure to submit to the jury the duty which appellants would owe to a mere licensee. In this connection they argue that appellee was in a place which was not frequented by customers and where she had no business, that there were numerous packages around her, and that the company's employees were engaged in their duties in handling these sundry packages and articles of merchandise about her in the receiving room and shipping department; if there had been testimony that appellee was in such a place the instruction would be erroneous, but, according to the record here, there is no showing that there was even one other package about or around her or in reach of her, and it is definitely established that she was not in the wareroom or receiving room, but on the contrary that she was in a place frequented by patrons of the store. Consequently we find no error in the instruction.

The last assignment of error is that the trial court erred in overruling appellants' motion for a new trial, first because the verdict is contrary to the overwhelming weight of the testimony, and second because the amount of damages awarded is so excessive as to evince passion and prejudice on the part of the jury.

After a careful review of the voluminous record before us we are of the opinion that there was sufficient evidence to justify the verdict on the issue of liability. Appellants' evidence did not dispute the fact that the package toppled over and struck appellee at a time when she was at a place frequented by customers of the store; in fact all the employees who were present admitted it, and it was the province of the jury to determine whether appellants were guilty of negligence proximately contributing to the injuries claimed.

■■ ■ As to the amount of the verdict, the medical testimony is conflicting as to the nature and extent of appellee's injuries. The physician who first treated her

testified that the strapping of her back and sleeping with boards in her bed were proper treatments for the injury he found. The verdict, while large, is supported by his testimony. Furthermore, at the instance of appellant company the appellee went to Ochsner's Clinic in New Orleans for further examination and treatment, and she was there fitted with a body brace, similar to a corset, with steel stays which she was instructed to wear and was still wearing at the time of the trial, and it was shown that this was a proper treatment. There was evidence of intense pain and suffering by appellee, as well as her inability to carry on her usual work. The fixing of an amount of damages to be awarded in cases of this nature is one of the functions of a jury, composed of men from all walks of life,—"the butcher, the baker, the candle-stick maker,—" and we are not authorized to invade the province of the jury unless the verdict is so excessive as to manifest such bias and prejudice that their determination is shocking to the conscience. Since we are unable to so assert in this case the judgment of the trial court is affirmed.

Affirmed.