STRAND ENTERPRISES, INC., et al. *v.* TURNER.

No. 39551 March 21, 1955 78 So. 2d 769

*Snow & Covington,* Meridian, for appellants.

*Strong & Smith,* Louisville; *Crawley & Brooks,* Kosciusko, for appellee.

HOLMES, J.

This is an attachment suit in chancery brought by the appellee in the Chancery Court of Winston County against the appellants, Strand Enterprises, Inc., a non-resident corporation, and Fletcher Tingle, Jr., a resident

of Neshoba County, and against Otiss Boyles, a resident of Winston County.

The appellee sought by her original bill to recover of the appellants both actual and punitive damages for personal injuries alleged to have been sustained by the appellee and caused by the negligence of the appellants, and to subject by attachment real estate owned by the non-resident defendant in Winston County, and to bind in the hands of the said Otiss Boyles funds and effects in his hands belonging to and owing to the said non-resident defendant.

After hearing the evidence, the chancellor rendered a decree in favor of the appellee and against the appellants for actual damages in the sum of $10,000, and from this decree the appellants appeal.

The material facts as shown by the testimony of the appellee are substantially as follows: The appellee owned a brick building in the City of Philadelphia, Mississippi, and on November 1, 1950, by agreement in writing, leased the same to Strand Enterprises, Inc., for a term of five years. The building had theretofore been converted by a former tenant for use in the operation of a moving picture theater. Strand Enterprises, Inc., used the building in the operation of a moving picture theater under the name of Pix Theater. It also operated another moving picture theater in the City of Philadelphia at a different location under the name of the Strand Theater. The appellant, Fletcher Tingle, Jr., was the manager of both theaters and in full charge thereof, and maintained his office in the Strand Theater. Strand Enterprises, Inc., employed a janitor, Charlie Jordan, for both theaters. He carried a key to both theaters and was left in charge of both theaters when Tingle was out of town. The Strand Theater operated seven days a week, and the Pix Theater operated only two days a week, namely, on Friday and Saturday. During the non-operating days of the Pix Theater, the same was kept locked, with keys

thereto in the possession of Tingle and Charlie Jordan, and no one was admitted thereto except by Tingle or Charlie Jordan.

Under the terms of the lease, the lessor was obligated to make all necessary repairs to the exterior of the building, and the lessee was obligated to maintain the interior of the building. From time to time leaks developed in the roof of the building, and upon being notified of the same by Tingle, the appellee promptly sent someone to repair the leaks. During the closed periods of the Pix Theater, the appellee had no access thereto unless admitted by the manager or janitor. After leasing the building to Strand Enterprises, Inc., and prior to the injuries complained of, the appellee had never been in the building except on one occasion when she went with Tingle up a small flight of stairs behind the projection room to look at an outside awning which was reported to her to be out of repair. She had never, prior to her injuries, gone in the main auditorium or the storage room to the rear thereof. During April or May, 1953, there was a heavy wind and rain storm which damaged a flue in the roof and caused leaks therein and on being notified of this condition by Tingle, the appellee sent a competent roof man to make the necessary repairs. During a subsequent rain it developed that the roof still leaked. Tingle notified the appellee of this condition and told her that property of Strand Enterprises, Inc., was being damaged, and requested her to come to the building during a rain and examine the situation from the inside and ascertain where the leaks were and what property of the lessor was being damaged, with a view of correcting the situation and protecting the property of the lessor, and further told her that he would unlock the building and let her in and that if he was not in his office she could have the colored boy who carried a key to the building unlock the same and let her in. Later, during a rain on July 20, 1953, which was a Monday, and a

day when the Pix Theater was closed and locked, the appellee went to Tingle's office with a view of entering the building to see where the leaks were and to see what damage, if any, was being done to the property of Strand Enterprises, Inc., and with a view of correcting the situation, all in accordance with the request theretofore made of her by Tingle. She found the janitor, Charlie Jordan, engaged in cleaning up, assisted by a colored boy named Johnnie Poe. The appellee had observed Poe assisting Jordan many times before for a long period of time. Poe was not paid by Strand Enterprises, Inc., but was paid by Jordan.

The appellee inquired for Mr. Tingle and was told that he was not in. She then made known her mission to Jordan, and told him of Mr. Tingle's request that she go in the building and of his statement that if he, Tingle, was not in, the boy with the keys would admit her to the building. Jordan took the keys from his pocket and gave them to Poe and told Poe to go with appellee and show her through the building. The appellee went with Poe, who unlocked the front of the building and admitted her. She went through the auditorium and through an exit which was covered by a curtain and which led to the storage room, and through a narrow passageway which led through an abandoned ladies' rest room. There was a globe socket in the ceiling but no bulb was in it. While it was daylight on the outside, it was only dimly lighted inside. The appellee viewed the roof and looked to see what property of the Strand Enterprises, Inc., had been damaged. She observed a small room at the southwest corner of the building which had formerly been a men's rest room, and started to this room to see if it contained any property of Strand Enterprises, Inc., which had been damaged. As she started through a narrow space between a small stairway and the wall, she stepped in a hole in the floor and sustained severe injuries. The hole was about twelve inches wide, two feet

long, and two or more feet deep. The hole had been there for more than two years and it was claimed by Tingle that it was the result of rotting caused by water leaking down the wall and onto the floor. The appellee testified that the hole was wholly unguarded, and that she had never been told of its existence by Tingle, nor requested to repair it by Tingle, and that she did not know of its existence. She further testified, in denial of Tingle's testimony that he kept the passageway to the hole guarded by a sixty-gallon steel drum, that there was no such object guarding the hole at the time she sustained her injuries, but that she had seen a steel drum on the outside of the building.

The appellant Tingle wholly denied the testimony of the appellee, denying that he had requested her to go in the building for the purpose of examining the leaks in the roof and seeing about the property of Strand Enterprises, Inc., which was claimed to be damaged, and further testified that he had told the appellee about the hole in the floor and had requested her to repair it. He admitted that he knew the hole was dangerous, but said that he kept it guarded by the steel drum.

It is readily apparent that the evidence on the vital issues here involved was conflicting. The chancellor resolved this conflict in favor of the appellee, and accordingly found that the appellee entered the building at the request of Tingle for the mutual benefit of herself and the appellants; that she was an invitee therein for the mutual benefit of both parties; that the appellants knew the hole was in the floor and knew that it was dangerous; that the hole had been in the floor for more than two years, and that the appellants had failed to exercise reasonable care to take proper and reasonable precautions to avoid injury to persons lawfully on the premises.

We think that the chancellor's findings of fact are amply justified under the evidence and we are not warranted in saying that they are manifestly wrong.

■■ The appellants contend, however, that under the terms of the lease there was an implied reservation of right in the appellee to go on the inside of the building to inspect the same for leaks, and that hence the appellee was a licensee, and that the appellants owed her no duty except not to wilfully injure her. We find nothing in the terms of the lease which conferred upon the appellee either expressly or by implication the right to enter the building otherwise than at the request and by the consent of the appellants. It is to be noted that the answer of the appellant, Strand Enterprises, Inc., avers that the appellee went into the building on the occasion complained of without the permission or acquiescence of the appellants, or either of them. This averment negatives the contention that she entered the building under an implied right granted by the terms of the lease. Furthermore, on the occasion in question, the appellee did not enter the building in reliance either by the appellee or the appellants on any claimed right under the terms of the lease. The appellee entered the building at the express request of the appellants and for the mutual benefit of the parties, that is, to enable the appellee to examine the roof for leaks from the inside of the building, and to ascertain what, if any, damage was being done to the property of the Strand Enterprises, Inc., with a view of undertaking to correct the situation.

■■ It is argued by the appellants that the appellant Tingle was merely an employee of the Strand Enterprises, Inc., and owed no duty to the appellee. We think this argument is unsupported by the facts as found by the chancellor. The appellee, under his employment as manager, was in full charge and control of the theaters of Strand Enterprises, Inc., in Philadelphia, and exercised pursuant to his employment full supervision and control

of the premises in question. As the servant of the Strand Enterprises, Inc., he was under an obligation both on his own behalf and on behalf of his master, Strand Enterprises, Inc., to exercise reasonable care to so use the premises which he controlled as not to injure another lawfully therein. 57 C. J. S., page 346.

The legal principles applicable to the facts as found by the chancellor are well settled.

■■ "So far as concerns the possession and use of leased premises, the lease operates as a demise or conveyance of the property for a specified period of time (Rich v. Swalm, 161 Miss. 505, 516, 137 So. 325), and no right of possession or use remains in the lessor unless expressly reserved, and no such appears in this case." Collins v. Wheeless, 171 Miss. 263, 157 So. 82.

■■ "An invitee is a person who goes on premises of another in answer to express or implied invitation of the owner or occupant on the business of the owner or occupant or for their mutual advantage." Nowell v. Harris, (Miss.) 68 So. 2d 464; Marie L. Patterson v. Ralph J. Sayers, d/b/a The Concord Hotel, (Miss.) No. 39,499, decided March 16, 1955.

The rule with respect to the duty owing by the occupant or owner of premises to an invitee therein, approved by this Court in Nowell v. Harris, supra, and as stated in 38 Am. Jur., page 754, Sec. 96, is as follows:

■■ "The rule is that an owner or occupant of lands or buildings, who directly or impliedly invites others to enter for some purpose of interest or advantage to him, owes to such persons a duty to use ordinary care to have his premises in a reasonably safe condition for use in a manner consistent with the purpose of invitation, or at least not to lead them into a dangerous trap or to expose them to an unreasonable risk, but to give them adequate and timely notice and warning of latent or concealed perils which are known to him but not to them."

In the very recent case of Marie L. Patterson v. Ralph J. Sayers, d/b/a The Concord Hotel, supra, this Court said: "Now, as to the duty Mr. Sayers owed Mrs. Patterson, it seems to be settled that the operator of premises is under duty to exercise reasonable diligence to keep such premises in a reasonably safe condition for use by an invitee," citing numerous authorities.

The question as to whether or not the appellants exercised reasonable diligence to keep the premises in question in a reasonably safe condition for the use of the appellee as an invitee therein was one for the determination of the chancellor. 65 C. J. S., Sec. 271, page 1205.

In view of the facts in this case, as found to be true by the chancellor, and under the legal principles applicable as hereinbefore referred to, we are of the opinion that the chancellor was correct in his conclusion that the appellee, on the occasion in question, was an invitee on the premises, and that she sustained her injuries as a direct and proximate result of the failure of the appellants to exercise reasonable diligence to keep such premises in a reasonably safe condition for use by an invitee, and that appellants accordingly subjected themselves to liability to the appellee for damages arising out of her injuries sustained on the occasion in question.

The appellants further argue, however, that the appellee should be barred of recovery under the doctrine of assumption of risk. According to the appellee's testimony, which the chancellor found to be true, she had never been advised of the existence of the hole and did not know of its existence. In the case of Saxton v. Rose, 201 Miss. 814, 29 So. 2d 646, the Court recognized the well settled principle that in order for one to be barred of recovery under the doctrine of assumption of risk, he must know and appreciate the danger and deliberately expose himself thereto. It is apparent in the case before us, under the chancellor's findings of fact, that the ap-

pellee did not know of the existence of the hole and did not know and appreciate the danger thereof, and certainly did not deliberately expose herself to the danger thereof. The contention, therefore, that the appellee is barred of recovery in this case under the doctrine of assumption of risk is, in our judgment, not well founded.

It follows from what has been said that we are of the opinion that the chancellor's findings of fact are fully warranted by the evidence, and that he was correct in his conclusions of law which imposed liability upon the appellant for the damages sustained by the appellee and arising out of her injuries.

 █ It is finally contended by the appellants that the amount of damages awarded by the chancellor is excessive. We do not think so in view of the undisputed evidence as to the nature and extent and severity of the appellee's injuries. The proof shows that prior to the appellee's injuries she was an active, healthy woman. She was 65 years of age, with a life expectancy of 11.55 years. She did all of her house work, including sweeping, waxing floors and cooking, and in addition, waited on an invalid brother who was confined to a wheel chair. A small bone in one of her legs was broken, and the ligaments around her ankle were torn, and a piece of bone was chipped off of her kneecap. Immediately following her injury, she made her way out of the building by holding on to the seats along the aisle of the theater. She limped to her car and drove home by using her left foot. She drove into her backyard and crawled on her hands and knees up the back steps to her bedroom. She suffered agony, according to her testimony and that of her daughter. She did not realize that she had any broken bones until she had a doctor a few days later and her leg was X-rayed. She was confined to her bed for approximately four months, and had to employ a practical nurse at an expense between $300 and $400. She is allergic to sedatives and was unable to take anything to relieve

her pain. At night she has to elevate her limb and put hot packs on it to help alleviate her suffering. If she is on her feet for any length of time, the limb swells and she has to go to bed and apply hot Epsom Salts packs in order to reduce the swelling. She has been unable to sleep at night because of her intense suffering. At the time of the trial eight months later, she was still suffering pain and unable to do her usual house work. The doctor. testified that as a result of her injuries she has developed traumatic arthritis. He further testified that her injuries have been very painful and that the injured leg is now larger than the other leg, and that in his opinion she will continue to suffer pain, and that her condition will grow progressively worse, and that her injury is permanent.

The chancellor expressly denied any award of punitive damages and confined his award to actual damages. We think that the award made by the chancellor is amply justified under prior decisions of this Court. Belzoni Hardwood Company v. Cinquimani, 137 Miss. 72, 102 So. 470; Meridian City Lines v. Baker, 206 Miss. 58, 39 So. 2d 541; Laurel v. Hutto, 70 So. 2d 605.

Considering the record as a whole and in view of the chancellor's findings of fact which we are unable to say are manifestly wrong, we are of the opinion that the decree of the chancellor should be, and it is, affirmed.

Affirmed.

*McGehee, C. J.,* and *Hall, Lee* and *Ethridge, JJ.,* concur.