318 So.2d 829 (1975)
J.C. PENNEY COMPANY and Holcombe C. White
v.
Mrs. Ruth Jones SUMRALL.
No. 48030.
Supreme Court of Mississippi.
July 28, 1975.
Rehearing Denied October 6, 1975.
Gibbes, Graves, Mullins, Bullock & Ferris, Laurel, for appellants.
Maxey, Clark & Casey, Robert Sullivan, Laurel, for appellee.
Before RODGERS, INZER and WALKER, JJ.
RODGERS, Presiding Justice.
This is one of those cases commonly called a "slip and fall case." Mrs. Ruth Jones Sumrall fell in the foyer or entrance of the J.C. Penney Company store in Laurel, Mississippi. She filed suit against J.C. Penney Company in the Circuit Court of the Second Judicial District of Jones County, Mississippi, based upon the alleged negligence of the appellant. The jury returned a verdict of thirty thousand dollars ($30,000.00) in favor of Mrs. Sumrall.
*830 The appellants requested the trial court to grant them a directed verdict at the end of the plaintiff's testimony, and also requested an instruction directing the jury to find for the defendants, J.C. Penney Company and Holcombe C. White, both of which were denied. After the jury's verdict, the appellants requested a new trial because of the failure of the court to grant a directed verdict in favor of the appellants.
After a long and careful examination of the testimony and the authorities on the subject, we have reached the conclusion that the defendant J.C. Penney Company and its manager, Holcombe C. White, were entitled to directed verdicts in their favor for the following reasons.
At the close of the plaintiff's testimony, in passing upon the defendant's motion for a directed verdict, the trial judge made the following comment:
"Motion be overruled. I think this is a case that is strong enough to go to the jury on whether or not the action taken, although admittedly prompt, was the proper course of action to take under these circumstances. Due to the location of that which caused the fall and that alone, I think, would make it a jury question as to whether the action taken was the proper course of action to be taken."
The plaintiff's testimony [which included the testimony of the store manager, Holcombe C. White, and the janitor, Lee McDonald] showed that there was vomit on the paved floor of the entrance to the J.C. Penney store; that the clerks of the store knew the substance was there; and that through no fault of the plaintiff she stepped in the emetic substance and slipped and fell causing her to suffer permanent injury.
The plaintiff's theory of the case was that it was the duty of the store owner to use ordinary care to provide a reasonably safe passageway for customer-invitees to walk in its store, and when its agents knew that a dangerous situation had occurred which would likely cause injury to the business invitees, it became the duty of the store owner to immediately remove the dangerous situation or to warn the business invitee of the danger.
Mrs. Mary Rhymes was introduced as a witness and she testified that one Lucille Millsaps came by where the witness was standing near the door and said that she was sick. Mrs. Rhymes saw Mrs. Millsaps run out the door and vomit in the foyer at the store entrance. She was asked the following questions and gave the following answers:
"Q. Now, when you saw her vomit, what did you do?
A. I stepped to the telephone to call Lee McDonald.
Q. About how far were you from that 'phone?
A. Just a few steps I would say  four feet. Three or four feet. Across the aisle.
* * * * * *
Q. Mrs. Rhymes, how long did it take you to get from where you were standing to the telephone?
A. Just a few seconds, I would say, because I was almost at it.
Q. All right, and what did you do when you got to the telephone?
A. I called Lee McDonald in the basement to hurry, that we had something in front of the store that needed to be cleaned up, and he hurried.
Q. All right, while you were on the telephone did you see the plaintiff?
A. As I was hanging the 'phone up she came around the corner and I yelled, `Look out.'
* * * * * *

*831 A. I just said, `look out!' And I was on my way out and  but she was falling."
Mrs. Rhymes also testified:
"A.  yes, ordinarily I would have run and got some paper and put over it.
Q. And what would you have done with the paper?
A. Put over it.
Q. And how much time elaspsed between the time that this customer, Lucille Millsaps, vomited, until the time you shouted to the plaintiff?
A. I would say just a couple of seconds, because she was right behind her, you know.
Q. All right, when you got off the 'phone you say you ran towards the door and she had already slipped?
A. Yes.
Q. Now, when did you see Lee McDonald?
A. Almost by the time I turned around. He came right up just in a few seconds.
Q. What would be your best estimate of the time that elapsed from the moment you saw the vomiting occur and the time that Lee McDonald got there?
A. I would say a minute and a half, or something like that.
Q. And do you know about how far you were from the place where the vomit was located?
A. Fifteen feet. I would say around fifteen feet."
On cross-examination, Mrs. Rhymes testified that almost by the time Mrs. Sumrall had fallen Mr. McDonald and Mr. Hardin [a fellow employee] had reached the area and assisted Mrs. Sumrall in getting to her feet, and that all of this happened in a minute and a half from the time she called McDonald. She said she had called Mr. Hardin and said:
"A. I told him to run to the front, that somebody had been sick.
* * * * * *
A. Well, he started out that way  he was on his way out."
She also testified that she had been instructed as follows:
"A. We had been instructed to call Lee too to clean up things that are dangerous to customers.
Q. Mrs. Rhymes, excuse me, but you are still evading my question. You had been instructed that you were supposed to first go to the area and then notify someone to come clean it up through somebody else; had you not been given that instruction?
A. We had been given instructions to cover things up. Yes.
Q. Before somebody got hurt?
A. Before somebody got hurt.
* * * * * *
A. We have been given instructions, yes. It hasn't been written down or anything.
Q. No, but you knew that's what you were required to do, isn't it? Isn't that true?
A. Probably so."
This suit is based upon the theory that the plaintiff, Mrs. Sumrall, was injured because of the negligence of J.C. Penney Company and its store manager, Holcombe C. White; that the store owner and its manager failed to use ordinary care to immediately remove the vomit and to warn the plaintiff or other customers of the danger.
*832 The theory of the plaintiff is clearly the law of negligence in this state and is also the general rule.[1]
In order to establish a claim of negligence against a defendant, however, it must appear that the offending defendant violated some duty owed to the plaintiff. Although the owner of a store to which he invites the public is held to the exercise of reasonable care in maintaining his place of business in a safe condition for the use of his customers, he is not an insurer of their safety. Sears, Roebuck & Co. v. Tisdale, 185 So.2d 916 (Miss. 1966).
The appellee argues that issues of fact are for the jury. We agree with this proposition. Nevertheless, there must be some evidence of negligence given a jury before it can determine that a defendant is guilty of negligence.
It must be borne in mind that the dangerous situation of vomit on the floor of the foyer was created instantly by a third person who was not an agent of the defendants and for whose negligence the defendants were not liable.
Since the defendants were not insurers of the safety of business invitees who were lawfully on the store property, the duty of the defendants required them only to eradicate the known dangerous situation within a reasonable time or to exercise reasonable diligence in warning those who were likely to be injured because of the danger. In either case, however, defendants were entitled to a reasonable time in which to attempt to perform the duty imposed by law.
The testimony in this case shows that the manager, clerks and janitor of the J.C. Penney Company did all they could within the limited few seconds, after having knowledge of the dangerous situation, to eradicate the danger to customers and within seconds to go to the place of danger with a paper to cover the vomit.
To argue that the clerk (who had knowledge of the sudden illness of a customer) should have gone to the place where the vomit was left by the customer rather than to have called the janitor to clean the foyer is like the argument that one is negligent because he called the fire department instead of first attempting to put out a sudden fire. We think that the evidence shows that the clerk did all she could within the limited time she had to act to correct the condition caused by a third party. The mere fact that a potential customer succeeded in reaching the vomit and falling before the janitor, the manager and other agents of J.C. Penney Company had a reasonable opportunity to correct the situation is not sufficient evidence to establish negligence on the part of the defendants. Consequently, there was nothing for the jury to decide.
The judgment of the trial court must, therefore, be reversed and a judgment entered here in favor of the appellants, after due consideration of this case in en banc conference.
Reversed and rendered.
GILLESPIE, C.J., and SMITH, ROBERTSON and BROOM, JJ., concur.
INZER, PATTERSON, SUGG and WALKER, JJ., dissent.
INZER, Justice (dissenting):
Being unable to agree with the conclusion of the majority that appellants were *833 entitled to a directed verdict in this case, I am compelled to dissent.
It is my opinion that in reaching its conclusion, the majority ignores the fundamental rule relative to granting a directed verdict. The rule is well stated in Butler v. Chrestman, 264 So.2d 812 (Miss. 1972), wherein we said:
In this state all questions of negligence and contributory negligence are determined by the jury. Miss.Code 1942 Ann. § 1455 (1956). The rule relating to the propriety of granting a directed verdict or peremptory instruction has been announced many times by this Court. We said in Mock v. Natchez Garden Club, 230 Miss. 377, 382, 92 So.2d 562, 563 (1957):
[T]hat if reasonable men might have a difference of opinion as to whether or not the negligence of the actor constituted a substantial factor in bringing about the injury, then the question is for the jury. We have also held repeatedly in cases too numerous to mention that upon a motion for a directed verdict all the facts expressly testified to, and all inferences necessarily and logically to be deduced therefrom, are to be taken as true in favor of the party against whom the motion is asked, and that a case should not be withdrawn from the jury unless the conclusion follows as a matter of law that no recovery can be had upon any view which can be properly taken of the facts which the evidence tends to establish, and further that if more than one reasonable inference can be drawn from the facts the question of negligence is for the jury. (Emphasis added). (264 So.2d at 815).
When the facts in this case are considered in the light of this rule, they clearly present a jury issue.
The majority opinion correctly states that testimony on behalf of Mrs. Sumrall establishes that she was permanently injured when she, through no fault of her own, slipped and fell when she stepped on a substance on the paved floor of the entrance to the J.C. Penney Store.
Mrs. Sumrall was entering the store to make a purchase, and the substance she stepped in was placed on the tile entrance to the store by a customer who became ill and vomited. The substance was of brownish color as was the tile. In the words of the janitor, Lee McDonald, it was "slick as okra." Appellants' clerks knew that the substance was on the floor, but no one warned Mrs. Sumrall of the danger.
In arriving at its conclusion that appellants were entitled to a directed verdict, the majority relies upon the testimony of Mrs. Mary Rhymes, and in so doing considers it in the light most favorable to appellants, instead of appellee, ignoring the fact that her testimony is contradicted by other witnesses. It is true that she testified that she saw the lady vomit and immediately went to the telephone and called Lee McDonald, who was then in the basement, to come and clean up the substance. She also testified that while she was hanging up the telephone, she saw Mrs. Sumrall approaching and yelled "look out." Just at that time Mrs. Sumrall was falling. It was her contention that she did not have time to do anything else, but her testimony in this regard is contradicted. Lee McDonald was in the basement when he received the telephone call. After receiving the call he testified that he had time to walk twenty steps from the telephone to the stairway, up the stairway, fourteen steps, get his mop from the utility room, get a box from another room, and walk about 90 feet to the front of the store before Mrs. Sumrall fell. After the accident McDonald in a statement estimated that about five minutes elapsed from the time he received the call until he reached the front of the store. He testified that before the trial he was timed as he went through those same procedures under the *834 direction of counsel for appellants and it took him about a minute and a half. Certainly if he had time to do these things, Mrs. Rhymes, after hanging up the telephone, had more than ample time to walk eight or ten steps and to place herself in a position to warn Mrs. Sumrall.
Mrs. Rhymes admitted that she had been instructed that when any liquid was on the floor she was to go to the place where the substance was located and cover it up in order to keep someone from getting hurt. If she had carried out these instructions, Mrs. Sumrall would not have been hurt.
The fact that the substance was placed on the floor by another customer does not excuse the appellants under the facts of this case. It is admitted they had actual knowledge of the existence of this dangerous situation; consequently, it then became their duty to use reasonable diligence to remedy the situation. In other words, it became their duty to take such reasonable care as should be taken by prudent men to prevent injury to appellee or to warn her of the danger. Appellants were aware of this duty and as a result had instructed Mrs. Rhymes what to do in such a situation. They established the standard of care employees should exercise in such a situation. Mrs. Rhymes did not carry out her instructions which would have prevented the fall and resulting injury, but instead chose to wait for the janitor to come up and clean up the substance. She attempts to excuse her failure to do as instructed by saying she did not have time to do anything other than telephone the janitor. The jury could have found from the evidence that more than a minute and a half elapsed from the time she completed the telephone call before Mrs. Sumrall fell. This was ample time for Mrs. Rhymes to have telephoned and then to have carried out her instructions. She also said she tried to warn Mrs. Sumrall by yelling "look out" but neither Mrs. Sumrall nor any other witnesses heard her do so. Under these circumstances, it is difficult to understand how it can be said that Mrs. Rhymes did all she could to correct the condition in the limited time she had to act.
It is also difficult to understand how the facts in this case support the statement in the majority opinion that:
The testimony in this case shows that the manager, clerks and janitor of the J.C. Penney Company did all they could within the limited few seconds, after having knowledge of the dangerous situation, to eradicate the danger to customers and within seconds to go to the place of danger with a paper to cover the vomit.
When we consider the facts in this case in the light most favorable to Mrs. Sumrall, as we are required to do, it is clear that Mrs. Rhymes had ample time not only to call the janitor to come clean up the substance, but that she also had ample time to have then carried out her instructions or taken other precautions to warn people entering or leaving the store of the dangerous situation. Whether Mrs. Rhymes did all she could in the limited time to correct the situation was for the jury to determine and not for this Court. The limited time element was only one factor to be considered by the jury in determining whether appellants carried out their duty to take such reasonable care as should be taken by prudent men to correct this dangerous situation after it came to their attention.
For the reasons stated, it is my opinion that the facts of this case present a typical case for determination by the jury and I would so hold.
PATTERSON, SUGG and WALKER, JJ., join in this dissent.
NOTES
[1] Stanley v. Morgan & Lindsey, Inc., 203 So.2d 473 (Miss. 1967); Patterson v. Sayers, d/b/a The Concord Hotel, 223 Miss. 444, 78 So.2d 467 (1955); Strand Enterprises, Inc. v. Turner, 223 Miss. 588, 78 So.2d 769 (1955); Sears, Roebuck & Co. v. Burke, 208 Miss. 306, 44 So.2d 448 (1950); Louisiana Oil Corporation v. Davis, 172 Miss. 126, 158 So. 792 (1935); Wilbourn v. Charleston Cooperage Co., 127 Miss. 290, 90 So. 9 (1921); S.H. Kress & Co. v. Markline, 117 Miss. 37, 77 So. 858 (1917); 65 C.J.S. Negligence § 63(45), at 726 (1966).