809 So.2d 722 (2001)
PIGGLY WIGGLY OF GREENWOOD, INC. and Ricky Harvey, Agent, Servant, and Employee of Piggly Wiggly of Greenwood, Inc., Appellants,
v.
Florida FIPPS, Appellee.
No. 2000-CA-00426-COA.
Court of Appeals of Mississippi.
December 11, 2001.
Rehearing Denied March 5, 2002.
*724 Richard L. Kimmel, Greenwood, Steven Cavitt Cookston, Chadwick Lester Shook, Attorneys for Appellant.
Ellis Turnage, Cleveland, Attorney for Appellee.
Before SOUTHWICK, P.J., IRVING, and MYERS, JJ.
MYERS, J., for the Court.
¶ 1. Florida Fipps slipped and fell while shopping in a Piggly Wiggly in Greenwood. Ms. Fipps fell when she stepped into a puddle of vomit which was on the floor. The jury awarded Ms. Fipps $200,000 for damages but reduced the amount to $100,000 per her own negligence. After the court denied the various motions offered by the defense, the defendants perfected this appeal.
¶ 2. Piggly Wiggly and Ricky Harvey's issues are whether the trial court erred when it denied Appellants' motions for summary judgment, directed verdict, JNOV, in limine. Also, whether it erred in refusing to allow the warning sign into evidence and in denying Appellants' motion for remittitur. Finding that the trial court committed no error, we affirm.

FACTS
¶ 3. Fipps broke her leg on November 7, 1996, in Piggly Wiggly by falling in a puddle of vomit located on the floor. The puddle of vomit was marked by the security guard on duty upon his noticing it. The manager on duty was Ricky Harvey and he was notified of the vomit by his security guard. The crux of the dispute lies in the question of the amount of time the vomit was on the floor before the store acted upon it.
¶ 4. The stories offered by either side conflict regarding the length of time that the vomit was on the floor prior to action by the store. Testimony was offered by Fipps's friend, Cora Roberts, in which she claimed that she saw the vomit on the floor some twenty minutes before Fipps slipped and fell in it. The store offered the testimony of the security guard who claimed to have repeatedly walked the store on his security route. He testified that each of these sweeps took approximately five minutes. He said there was no vomit on the floor during the security sweep immediately before the fall. When he did see the vomit, he placed a yellow warning sign near it and then went to alert management. The security guard testified that his actions, including his return to the spot, where Fipps had by then, already fallen, took less than five minutes. By the time the security guard and an employee returned to the scene, Fipps was on the floor. Roberts could not remember seeing a warning sign in the vicinity of the vomit.
¶ 5. Less than two weeks later, while at home recuperating from her fall at Piggly Wiggly, Fipps reinjured her leg and was taken to the emergency room where she received care from Dr. Sandifer, an orthopedist. Weeks later, she was found to have a pulmonary embolus. Her regular doctor, Dr. Shah, treated Fipps for the blood clot. This blood clot was never proven to be the result of Fipps' initial fall in the Piggly Wiggly. Fipps did not call Dr. Shah to testify regarding the causes of the pulmonary embolus, thus leaving only Dr. Sandifer to be cross-examined regarding Fipps' stay in the hospital. Fipps returned to Dr. Sandifer in February of 1997 for her three-month post-surgery examination *725 at which time he found her femur fully healed.
¶ 6. At trial, Piggly Wiggly tried to enter the warning sign allegedly placed near the puddle by the security guard. Fipps' attorney vehemently objected to its introduction due to the fact that the sign was not listed in the pretrial order. He also asserted that the sign in the court room was not the same sign described by the security guard in his deposition because the dimensions were different. The judge excluded the warning sign.
¶ 7. All of these questionable and conflicting facts were placed before the jury for consideration. Ms. Fipps suffered actual damages in the form of a broken femur and $11,509 in medical bills. Fipps was awarded a total of $100,000 by the jury.
¶ 8. At the end of trial, Piggly Wiggly and Ricky Harvey combined their motions to (1) renew motion for directed verdict; (2) set aside jury verdict and vacate judgment; (3)judgment notwithstanding the verdict; or in the alternative for (4) a new trial; or in the alternative to (5) alter or amend judgment/for remittitur. All of which were denied by the trial court.

STANDARDS OF REVIEW
¶ 9. Our standard of review for summary judgment and directed verdicts is de novo.
Summary Judgment may be appropriately entered by a trial court "if the pleadings depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." All that is required of a nonmoving party to survive a motion for summary judgment is to establish a genuine issue of material fact by the means available under ... Miss. R. Civ. P. 56(c).
Singleton v. Ratliff, 757 So.2d 1098 (¶ 6) (Miss.Ct.App.1999) (quoting Spartan Foods Sys., Inc., v. American Nat'l Ins. Co., 582 So.2d 399, 402 (Miss.1991)). Directed verdicts and new trial motions are explained in the following quote:
On a motion for a directed verdict the court "must consider the evidence in the light most favorable to the party opposed to the motion." Rester v. Morrow, 491 So.2d 204, 211-12 (Miss.1986). A motion for a new trial is addressed to the sound discretion of the circuit judge, and may be granted when the verdict of the jury "is against the overwhelming weight of the evidence." Bobby Kitchens v. Mississippi Insurance Guar. Ass'n, 560 So.2d 129, 132 (Miss.1989).
Caruso v. Picayune Pizza Hut, Inc., 598 So.2d 770, 773 (Miss.1992).
¶ 10. Once a jury has returned a verdict in a civil case, a court cannot enter a new judgment contrary to that of the jury unless it is clearly demonstrated that, as a matter of law, the evidence as a whole considered in a light most favorable to the verdict, would not allow a reasonable hypothetical juror to find as the jury found. Bell v. City of Bay St. Louis, 467 So.2d 657, 660 (Miss.1985). This Court will not overturn the verdict of the jury unless it is against the overwhelming weight of the evidence.
¶ 11. Next we must consider Piggly Wiggly's motion for a JNOV or motion for a new trial. Motions for a new trial challenge the overall weight of the evidence and a judgment notwithstanding the verdict challenges the legal sufficiency of the evidence. Perkins v. State, 788 So.2d 826, 829 (Miss.Ct.App.2001). A motion for a new trial implicates the discretion of the judge and will not be reversed *726 unless the trial judge abused her discretion. Id. Likewise, the denial of a JNOV will not be reversed unless in reviewing all the evidence a reasonable fair-minded juror would reach a different verdict.
¶ 12. Fipps needed to show that Piggly Wiggly had been negligent. When discerning if a business owner is liable for a hazard we evaluate the claim using the following elements. The first element is that some negligent act by the store caused her injury; or secondly she must show that Piggly Wiggly had actual knowledge of the dangerous condition but failed to adequately warn Fipps. If neither of those applied, then Fipps needed to show that the dangerous condition remained long enough to impute constructive knowledge. Downs v. Choo, 656 So.2d 84, 86 (Miss.1995).

DISCUSSION
¶ 13. Piggly Wiggly and Ricky Harvey argue that this case should have been dismissed at summary judgment or they should have been granted a directed verdict. As stated above, to grant summary judgment or a directed verdict, we must find that no genuine issue as to any material fact exists and thus no issue to submit to the jury all while viewing the evidence in a light most favorable to the nonmoving party. In the present situation, there is conflicting testimony as to whether a warning sign was in place at the time of Fipps' fall. Also, there is conflicting testimony concerning the length of time that the vomit was on the floor of the store before it was addressed by someone at the store.
¶ 14. Testimony was offered by Fipps' friend, Cora Roberts, who claimed that she saw the vomit on the floor some twenty minutes before Fipps slipped and fell in it. Roberts was impeached on the stand when her testimony conflicted with other employees regarding several facts concerning the store that day, such as who was on duty at the time of the fall, and her own sworn statement. To rebut her signed sworn statement, she claimed it was not hers.
¶ 15. The other side offers testimony of the security guard who claims to have repeatedly walked the store on his security route. He testified that each of these sweeps took approximately five minutes. During the security sweep immediately prior to the fall, he said that there was no vomit on the floor. When he did see the vomit, he testified that he placed a warning sign near it and then went to alert management. The security guard testified that his actions, including his return to the spot where Fipps had already fallen, took less than five minutes. By the time the security guard and an employee returned to the scene, Fipps was on the floor.
¶ 16. Summary judgment was properly denied here because the questions of whether a warning sign was in place at the time of the fall, its adequacy and how long the vomit was on the floor prior to the fall are all factual questions for the jury to consider. J.C. Penney Co. v. Sumrall, 318 So.2d 829, 832 (Miss.1975).
¶ 17. In this case, Piggly Wiggly asserts that the fact scenario is similar to that of J.C. Penney Co. v. Sumrall. In Sumrall, the plaintiff slipped and fell in a pool of vomit located in the foyer of J.C. Penney. Moments before her fall, another patron alerted a salesperson that she was sick and then ran out and vomited in the foyer. The salesperson immediately called the janitor to hurry up to the foyer and clean the mess up. As she hung up the phone she saw the woman coming in toward the vomit and called to the woman to watch out. Unfortunately, it was too late because the woman was already falling.
*727 ¶ 18. In denying J.C. Penney's motion for a directed verdict, the trial judge held that the case was strong enough to go to the jury because the issue would be whether the action taken, while prompt, was the proper course of action. The Mississippi Supreme Court held that "there must be some evidence of negligence given a jury before it can determine that a defendant is guilty of negligence." Id. at 832. The court continued, stating that
[s]ince the defendants were not insurers of the safety of business invitees who were lawfully on the store property, the duty of the defendants required them only to eradicate the known dangerous situation within a reasonable time or to exercise reasonable diligence in warning those who were likely to be injured because of the danger. In either case, ... defendants were entitled to a reasonable time in which to attempt to perform the duty imposed by law.
Id.
¶ 19. The court further held that the manager, clerk and janitor "did all they could within the limited few seconds, after having knowledge of the dangerous situation, to eradicate the danger to customers...." Sumrall, 318 So.2d at 832. "The mere fact that a customer succeeded in reaching the vomit and falling before the janitor, the manager and other agents ... had a reasonable opportunity to correct the situation is not sufficient evidence to establish negligence on the part of the defendants. Consequently, there is nothing for the jury to decide." Id.
¶ 20. The facts in Sumrall are indeed similar to that of Piggly Wiggly's. However, the distinguishing fact in Sumrall's scenario is that, unlike Piggly Wiggly, J.C. Penney knew exactly when the vomit was placed on the floor and reacted to the dangerous situation within a matter of minutes of the actual time of occurrence. Piggly Wiggly reacted by attempting to warn patrons and beginning cleanup as soon as they knew of the existence of the vomit. However, the jury must not have believed Piggly Wiggly's warning was adequate as they found for Fipps.
¶ 21. In another suit where a restaurant patron filed a personal injury claim after stumbling over a mat that was placed over a loose carpet tacking strip, the court held that differing testimony placed the issue before the jury. Caruso v. Picayune Pizza Hut, Inc., 598 So.2d 770, 773 (Miss. 1992). During supper time, Caruso tripped over a rug placed on the location early in the day during the lunch time. Both the daytime and the evening managers tried unsuccessfully to nail down the stripping to fix the problem. The repairman was unavailable until the next day. The problem area was by the salad bar, one of the most highly traveled areas of the restaurant. A red rug was place over the carpet stripping which was there to connect the dark green carpet to orange/ rust colored tile. Both managers and the other employees testified that the rug was flush to the floor and that the carpet area was raised about a fourth of an inch above the tile. Id. at 771.
¶ 22. The jury found for Pizza Hut and Caruso appealed the decision of the judge denying her motion for new trial in addition to appealing the denial of her motion for a directed verdict. The focus was whether there were facts in issue to be considered by the jury. Whether the area was mended or camouflaged, the rug was flush or its presence gave the misleading appearance of being flat and whether the area was well lit or dim, were all contradictions in testimony to be evaluated by the jury. Caruso, 598 So.2d at 773.
¶ 23. There is conflicting testimony in this case regarding the dangerous condition and whether there was adequate *728 warning by the store. Both of which are factual issues for the jury to decide. Accordingly, we find no error was committed by Judge Sanders regarding the treatment of the disputed factual issues in this case.
¶ 24. As for the issues dealing with the motion in limine to precluded testimony about Fipps' pulmonary embolus, the unproduced warning sign and the motion for remittitur, these are evidentiary matters within the discretion of the judge.[1] The relevancy and admissibility of evidence are largely within the discretion of the trial court and reversal may be had only where that discretion has been abused. McIlwain v. State, 700 So.2d 586, 590 (Miss.1997). There was no evidence of abuse presented, nor did we discover any such evidence during our own review. We find that the trial judge committed no error in regard to her treatment of these issues.
¶ 25. We are faced with facts that give us a puddle of vomit on the floor for an unknown period of time, a security guard who claims to have placed a warning sign near it, a former employee that claims to have seen it twenty minutes before the mishap and an elderly lady who slipped and fell after stepping in the vomit. The jury considered this and found in favor of the plaintiff. However, the jury must have believed that some warning was given as they found that Fipps was contributorily negligent in causing her injuries, including the re-injury and pulmonary embolus, thereby reducing her award by fifty percent. We find no error occurred here and thus, affirm.
¶ 26. THE JUDGMENT OF THE CIRCUIT COURT OF LEFLORE COUNTY ON CHANGE OF VENUE FROM BOLIVAR COUNTY IS AFFIRMED. STATUTORY DAMAGES AND INTEREST ARE AWARDED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING and SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, CHANDLER and BRANTLEY, JJ., CONCUR.
NOTES
[1] In dealing with additur or remittitur, the Miss.Code Ann. § 11-1-55 (Supp.2000) provides the authority to impose it. "The Supreme Court or any other court of record in a case in which money damages were awarded may overrule a motion for a new trial or affirm on direct or cross-appeal, upon condition of an additur or remittitur, if the court finds that the damages are excessive or inadequate for the reason that the jury or trier of the facts was influenced by bias, prejudice, or passion, or that the damages awarded were contrary to the overwhelming weight of the credible evidence. If such additur or remittitur be not accepted then the court may direct a new trial on damages only."