IRVING, P.J.,
for the Court:
¶ 1. Laura Karpinsky commenced this action by filing a complaint in the Harrison County Circuit Court against American National Insurance Company (ANIC) and OraClean, Inc., seeking damages as a result of a slip-and-fall accident at Edge-water Mall in Biloxi, Mississippi.[1] OraCle-an timely answered the complaint and later moved for summary judgment, which the circuit court granted. Feeling aggrieved, Karpinsky appeals and argues that the circuit court erred in granting summary judgment in favor of OraClean.
¶ 2. After a careful review of the record, we find that a genuine issue of material fact exists as to whether OraClean had sufficient time to remedy the hazardous condition that led to Karpinsky’s fall and resulting injuries. Accordingly, we reverse the judgment of the circuit court and remand this case for a trial on the merits.
*103 FACTS
¶ 3. On August 24, 2005, Karpinsky slipped and fell in a puddle of water in front of Lane Bryant, a retail store located in Edgewater Mall. ANIC owns Edge-water Mall and contracts with OraClean to provide housekeeping services for the mall.
¶ 4. In her complaint, Karpinsky alleged that OraClean was negligent for failing to take reasonable steps to ensure her safety or provide her with adequate warning of the liquid on the floor. Karpinsky maintains that OraClean had actual notice of the spill because a customer had notified the mall’s Guest Services of the spill more than five minutes prior to her accident.[2]
¶ 5. Gail Clark witnessed Karpinsky’s fall. During her deposition, Clark testified that when she entered Lane Bryant, there was nothing on the floor. She stated that she shopped in Lane Bryant for “about five minutes,” and when she came out of the store, she saw a spill and a cup with ice in it on the floor. She testified that she walked around the spill as she exited the store. Approximately ten seconds later, Clark saw Karpinsky fall. Clark and her husband came over to assist Karpinsky and encouraged her to report the incident at the information booth, which Karpinsky eventually did. Clark further testified that she did not know how the spill had occurred.
¶ 6. Additional facts, as neeessary, will be related during our analysis and discussion of the issue.
ANALYSIS AND DISCUSSION OF THE ISSUE
¶ 7. An appellate court reviews the grant or denial of a summary-judgment motion de novo. Angle v. Koppers, Inc., 42 So.3d 1, 4 (¶ 6) (Miss.2010). The evidence in the record is viewed in the light most favorable to the non-moving party. Id. A party is entitled to summary judgment when “the pleadings, depositions, answers to interrogatories[,] and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.” M.R.C.P. 56(c). “When a motion for summary judgment is made and [properly] supported ..., an adverse party may not rest upon the mere allegations or denial of his pleadings, but his response, by affidavits or [otherwise] ..., must set forth specific facts showing that there is a genuine issue for trial.” M.R.C.P. 56(e).
¶ 8. The Mississippi Supreme Court has held:
A business owner has a duty to keep his premises in a reasonably safe condition for invitees. Where an injured party demonstrates that the dangerous condition was created by the negligence of the business or its employees, the injured party need not prove notice to the business. However, if the dangerous condition was created by someone not associated with the business, the plaintiff must produce evidence that the owner or operator had actual or constructive knowledge of the dangerous condition as well as a sufficient opportunity to correct it.
Miller v. R.B. Wall Oil Co., 970 So.2d 127, 132 (¶ 17) (Miss.2007) (citing Drennan v. Kroger Co., 672 So.2d 1168, 1170-71 (Miss.1996)).
¶ 9. It is uncontested that Karpinsky was a business invitee on the day of the accident. Karpinsky never claimed that *104 OraClean caused the spill or that anyone connected to it did. Karpinsky’s only claim was that OraClean had actual knowledge of the spill and had sufficient time to clean it up prior to her fall but failed to do so. Thus, to be entitled to summary judgment, OraClean carried the burden of producing credible evidence that it had neither actual nor constructive knowledge of the spill, or if it had knowledge of it, that it did not have sufficient time to clean it up prior to Karpinsky’s fall. We find that it failed to produce such evidence.
¶ 10. Attached to OraClean’s motion for summary judgment were the following items: Karpinsky’s complaint, a portion of her deposition, Clark’s deposition, and an itemization of facts. Based on the depositions, OraClean proved that the spill could not have been on the floor for more than five minutes and that Karpinsky did not know who caused the spill. OraClean did not offer any evidence that it lacked actual knowledge of the spill. It simply contended at the summary-judgment hearing that Karpinsky could not meet her burden of proof at trial. However, whatever evidence Karpinsky could or could not produce at trial was not an issue until Ora-Clean produced credible evidence at the summary-judgment stage that there were no genuine material issues for trial. It did not produce any evidence that it lacked knowledge of the spill or any evidence regarding the amount of time required to allow it a reasonable opportunity to clean up the spill. Neither Clark nor Karpinsky gave any testimony indicating either the distance between housekeeping’s physical location within the mall and the area where the spill occurred, or the amount of time that would have been required for housekeeping to arrive at the scene after being notified of the spill.
¶ 11. In response to OraClean’s motion for summary judgment, Karpinsky filed the affidavit of Dempsey M. Levi, her former attorney. Attached to the affidavit as exhibits were an Incident Report of Kar-pinsky’s fall, prepared by an employee of Edgewater Mall, and the transcript of a statement that Clark had given to Levi regarding the incident. In the statement, Clark said that it appeared to her that the spill had been on the floor for quite some time because it had spread and had been tracked through. In the Incident Report, Powell stated: “Guest Services advised prior to the alleged incident a customer had informed of a spill in front of Lane Bryant, at which time Guest Services notified housekeeping.” The Incident Report does not indicate the time that the customer reported the spill.
¶ 12. It is clear that Clark’s statement to Levi and the Incident Report create a genuine issue of fact that requires resolution by a jury. Clark’s statement that it appeared that the spill had spread and had been tracked through creates an issue as to how long the spill had been on the floor, notwithstanding her deposition testimony that the spill could not have been there longer than five minutes. The Incident Report proves that OraClean received notification of the spill.
¶ 13. While Levi’s affidavit was objectionable because it did not comport with the requirements of Rule 56(e), OraClean did not file a motion to strike it.[3] The affidavit was filed a day before the summary-judgment hearing. M.R.C.P. 56(c) (permitting an adverse party to a summary-judgment motion to serve opposing affidavits prior to the day of the hearing). *105 There is ample case law holding that if a party fails to move to strike a non-complying affidavit, he waives the matter. See, e.g., Bd. of Educ. of Calhoun County v. Warner, 853 So.2d 1159, 1163 (¶ 16) (Miss.2003). Therefore, for purposes of summary judgment, the affidavit should have been considered.
¶ 14. In summary, we find that OraCle-an failed to present any evidence that it lacked actual knowledge of the spill, or that more than five minutes were required to afford it a reasonable opportunity to clean it up. Additionally, we find that since OraClean failed to carry its burden of production to show that there were no genuine issues as to any material fact for trial, the burden of persuasion never shifted to Karpinsky to “set forth specific facts showing that there is a genuine issue for trial.” Nevertheless, Karpinsky presented facts by affidavit that showed: (1) OraCle-an had actual knowledge of the spill and did not clean it up until after she had fallen and (2) the existence of a triable issue as to whether the spill had been on the floor long enough for OraClean to have had a reasonable opportunity to clean it up prior to her fall.
¶ 15. The dissent apparently confuses plaintiff Karpinksy’s burden of proof at trial with her burden, as a non-moving party, at the summary-judgment stage. Our jurisprudence is well settled that “[t]he party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law.” Smith v. Malouf 597 So.2d 1299, 1302 (Miss.1992) (citations omitted). The “proponent of [a] summary judgment motion ⅛ not permitted to rest exclusively on the weakness of [the] opponent’s response.’” Id. at 1303 (quoting Brown v. Credit Ctr., Inc., 444 So.2d 358, 364 (Miss.1983)). Therefore, “[b]efore [an appellate court] can affirm the summary judgment, [it] must ascertain that the strength of [the] proponent’s showing is such that it is entitled to judgment as a matter of law.” Id. (quoting Brown, 444 So.2d at 364). “[E]ven in the absence of a response [by the non-moving party,] the court may enter judgment only ‘if appropriate,’ i.e., if no genuine issue of material fact exists.” Price v. Purdue Pharma Co., 920 So.2d 479, 485 (¶ 16) (Miss.2006) (quoting Foster v. Noel, 715 So.2d 174, 180 (Miss.1998)).
¶ 16. The dissent also cites J.C. Penney Co. v. Sumrall, 318 So.2d 829 (Miss.1975) and asserts that Sumrall provides guidance, given its similarity to this case. While the Sumrall court reversed and rendered a verdict in favor of the plaintiff, it is clear to us that the dissent has mis-analyzed the facts that led to that decision. A recitation of the facts in Sumrall is sufficient to point out the stark contrast between that case and ours. In Sumrall, Ruth Jones Sumrall fell in some vomit outside of the entrance to a J.C. Penney store. Sumrall, 318 So.2d at 829. Sumrall sued J.C. Penney and its store manager, Holcombe C. White, claiming negligence on the part of the store manager for failing to use ordinary care to immediately remove the vomit. Id. at 829-30. J.C. Penney offered the testimony of store employee Mary Rhymes, who observed the person vomiting in the foyer outside the store’s entrance. Id. at 830. We quote the relevant portion of Rhymes’s testimony:
Q. Now, when you saw her vomit, what did you do?
A. I stepped to the telephone to call Lee McDonald [the store’s janitor].
Q. About how far were you from that ‘phone?
*106 A. Just a few steps I would say — four feet. Three or four feet. Across the aisle.
Q. Mrs. Rhymes, how long did it take you to get from where you were standing to the telephone?
A. Just a few seconds, I would say, because I was almost at it.
Q. All right, and what did you do when you got to the telephone?
A. I called Lee McDonald in the basement [and told him] to hurry, that we had something in front of the store that needed to be cleaned up, and he hurried.
Q. All right, while you were on the telephone did you see the plaintiff?
A. As I was hanging the ‘phone up[,] she came around the corner[,] and I yelled, ‘Look out.’
A. I just said, “[L]ook out!” And I was on my way out and — but she was falling.
[[Image here]]
A. [Y]es, ordinarily I would have run and got [sic] some paper and put [the paper] over it.
Q. And what would you have done with the paper?
A. Put [it] over it.
Q. And how much time elapsed between the time that this customer, Lucille Millsaps, vomited, until the time you shouted to the plaintiff?
A. I would say just a couple of seconds, because she was right behind her, you know.
Q. All right, when you got off the ‘phone you say you ran towards the door and she had already slipped?
A. Yes.
Q. Now, when did you see Lee McDonald?
A. Almost by the time I turned around. He came right up just in a few seconds.
Q. What would be your best estimate of the time that elapsed from the moment you saw the vomiting occur and the time that Lee McDonald got there?
A. I would say a minute and a half, or something like that.
Q. And do you know about how far you were from the place where the vomit was located?
A. Fifteen feet. I would say around fifteen feet.
Id. at 830-31.
¶ 17. It is abundantly clear that these facts are substantially different from ours. In Sumrall, the store’s employee tried to warn the plaintiff about the vomit by shouting out to her to watch out. Further, the store proved that it responded immediately to the notice that vomit was on the floor but that it did not have a reasonable time to remove it before the plaintiff fell. In our case, the summary-judgment evidence conflicts as to how long the spill had been on the floor. OraClean produced evidence showing that it could not have been on the floor for longer than five minutes. Karpinsky produced evidence that shows that the spill could have been on the floor for a longer period because it had spread and had been tracked through. The Incident Report shows that the fall occurred at approximately 18:45 hours and that the floor was mopped at 18:48 hours. It also shows a “reported time” of 18:50 hours. However, it is unclear as to whether this “reported time” is (1) when Karpin-sky reported her fall, (2) when the unidentified customer reported the spill, or (3) when the incident was reported to the author of the Incident Report. More importantly, as previously stated, OraClean produced no evidence to show that it had *107 insufficient time to clean up the spill before Karpinsky fell. As stated, neither Clark nor Karpinsky gave any testimony indicating either the distance between housekeeping’s physical location within the mall and the area where the spill occurred, or the amount of time that would have been required for housekeeping to arrive at the scene after being notified of the spill. There is simply nothing in the record on this point. Therefore, we find that the circuit court erred by granting summary judgment. Consequently, we reverse the judgment of the circuit court and remand this case for further proceedings.
¶ 18. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE AP-PELLEES.
LEE, C.J., ROBERTS, CARLTON, RUSSELL AND FAIR, JJ., CONCUR. MAXWELL, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. GRIFFIS, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY ISHEE, J.; BARNES, J., JOINS IN PART.

. For purposes of this opinion, we will refer to ANIC and OraClean collectively as OraCle-an unless the context requires otherwise.

. An unknown housekeeping employee responded to the call but arrived after Karpin-sky fell.

. "[A]ffidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matter stated therein.” M.R.C.P. 56(e).