501 So.2d 367 (1987)
Maurice McIntosh
v.
George W. DEAS, d/b/a Deas Tire Company.
No. 56936.
Supreme Court of Mississippi.
January 7, 1987.
David A. Wheeler, Wheeler & Wheeler, Biloxi, for appellant.
Stanford E. Morse, Jr., White & Morse, Gulfport, for appellee.
Before HAWKINS, P.J., and DAN M. LEE and GRIFFIN, JJ.
DAN M. LEE, Justice, for the Court:
In this personal injury action brought in the Circuit Court of Harrison County, the plaintiff, who had asked for $100,000.00 in damages, was awarded $75,000.00. The trial court, however, ordered a remittitur of $35,000.00. The plaintiff has appealed the remittitur, and the defendant has cross-appealed the trial court's failure to grant him a judgment notwithstanding the verdict.
Maurice McIntosh was, at the time of the accident complained of, a sixty-six year old self-employed funeral director and embalmer from Chicago. He was in Mississippi in February of 1979, along with some other men, on a golfing vacation. On the second day of the vacation, February 6th, rain *368 prevented the men from golfing. Since McIntosh, who had driven his Peugeot from Chicago, had experienced some tire trouble on the trip, he decided to take the day to get one of his tires replaced. Along with him was Earnest Davis, a fellow vacationer.
McIntosh had noticed the Deas Tire Company's sign on the way into Gulfport. The sign indicated that Deas carried Michelin tires, the brand that McIntosh's car used. He and Davis pulled into Deas' place of business and were directed by an employee to pull inside the shop. They parked the car over a rack, then McIntosh got out of the car to explain to one of the workers what he wanted. He walked to the left rear of the car to show the employee which tire he wanted replaced. After showing the employee the defective tire, McIntosh then walked back to the driver's side of the car to show the employee how to operate the controls on the Peugeot. As McIntosh then stepped back to allow the employee to see inside his car, he tripped over an electrical outlet box sticking up out of the floor, and fell on his head and shoulder.
McIntosh initially thought that he had only sprained his ankle. However, by the next day, the foot had swollen and become painful, so McIntosh called Deas and asked to see a doctor. Deas sent him to see Dr. D.L. Clippinger, who diagnosed the injury as a fractured, or broken, ankle. Clippinger could not put the ankle in a cast, due to the swelling; however, upon learning that McIntosh would soon be returning to Chicago, he advised him to see a doctor there.
To avoid ruining his friends' vacations, McIntosh remained on the Coast for the rest of the week. However, he did not join the other men on the golf course, but convalesced in his room, with his foot elevated. As soon as he returned to Chicago, McIntosh's wife took him to the hospital, where he stayed for eight days.
McIntosh wore a cast for the next six weeks. Because his job required him to stand and move about constantly, the injury to his ankle caused him to miss a substantial amount of work. His income was cut in half for 1979, since, for the first five or six months after the accident, he could not stand for over 2-3 hours at a time. According to McIntosh, one ankle is still larger than the other one, and he continues to suffer from intermittent pain. McIntosh testified at trial to $13,392.76 in damages, including medical bills and lost income.
The testimony regarding the accident and the damages was essentially undisputed, except for the condition of Deas Tire at the time of the incident. McIntosh and Davis both testified that the outlets, which apparently stuck up between 4" and 8" from the floor, were painted a "dismal gray"  the same color as the floor. They also testified that immediately after the accident employees of Deas began putting rims around the outlets, presumably, to make them more noticeable. Both men stated that they did not see the outlets until after McIntosh fell. Two former Deas employees, on the other hand, testified that the outlets were painted yellow, and that it was a common practice to keep rims over them. One of Deas' witnesses, however, testified that some employees had stubbed their toes on the outlets.
The jury's verdict for the plaintiff was returned on March 28, 1985. On September 30, 1985, the trial judge issued an order stating, in pertinent part:
At the conclusion of the arguments, the Court observed that as the record was practically free of trial error, except possibly on the amount of damages awarded, a remittitur might be in order, and suggested to the parties that they settle the case before a ruling on this motion... .
A careful examination of the evidence in relation to the issue of negligence, proximate cause and the nature and extent of injuries, and the instructions granted by the court revealed that there was practically no conflict on the issues or instructions. The only area upon which an appeal might be successful involved the amount of damages awarded. The record is overwhelmingly in favor of the Plaintiff on all other issues. The *369 damages in this case are based upon the testimony of the Plaintiff, his friend and the deposition of the Defendant's Worker's Compensation doctor. Although no medical disability was established, the quality and presence of the Plaintiff as a witness and ligigant [sic] favorably impressed the fact-finder as to the validity of the Plaintiff's claim.
After weighing all the factors it is the Court's opinion that a remittitur should be granted... .

I. DID THE TRIAL COURT ERR IN GRANTING A REMITTITUR?
The appellant's only assigned error is the granting of the $35,000.00 remittitur. Analysis of this assigned error is made difficult by the fact that neither the jury award nor the remittitur were itemized. Both the trial judge and the jury had before them evidence of $13,392.76 in damages, plus testimony as to the pain and suffering related to the injury. However, for reasons known only to themselves, the jury felt that an award of $75,000.00 was proper, while the judge thought that only $40,000.00 was necessary.
As the appellant has pointed out, this Court has approved jury verdicts of similar disparity to the actual damages. Woods v. Nichols, 416 So.2d 659 (Miss. 1982) gives an extensive discussion of prior cases where large verdicts were approved. In Woods, where the plaintiff UPS driver was severely injured in a traffic accident, the Court affirmed a $550,000.00 verdict against approximately $53,000.00 in actual damages. The majority opinion stated, "Some of the elements that may be considered by the jury ... include: the degree of physical injury, mental and physical pain, present and future, temporary and permanent disability, medical expenses, loss of wages and wage-earning capacity, sex, age and plaintiff's state of health... ." Id. at 671. In Swaggart v. Haney, 363 So.2d 251 (Miss. 1978), where medical expenses were $4,422.07, and lost wages about $12,000.00, a verdict of $100,000.00 was affirmed. Finally, in Kinnard v. Martin, 223 So.2d 300 (Miss. 1969), the Court affirmed a verdict of $100,000.00 to the plaintiff driver and $75,000.00 to his passenger wife, when their medical expenses were $5,559.42 and $6,466.20, respectively.
The case at hand bears a striking resemblance to Holmes County Bank & Trust v. Staple Cotton Co-op, 495 So.2d 447 (Miss. 1986). In that case, the plaintiff, who was also retired, received an award of $200,000.00 for injuries suffered as the result of a truck/tractor-trailer accident. The trial judge ordered a remittitur of $113,400.38, leaving the plaintiff only $86,599.62. Justice Griffin, writing for the Court, reversed the trial court's order of a remittitur, holding that:
Judges cannot sit as jurors, and the question before them is never what they would have done sitting as a juror but whether, considering the evidence in the light most favorable to the non-moving party, together with all reasonable inferences which may be drawn therefrom, the court should disturb the jury verdict.
Id. at 451.
Miss. Code Ann. § 11-1-55 (Supp. 1986) provides a statutory constraint to altering a jury's verdict. The statute provides, in pertinent part:
The supreme court or any other court of record in a case in which money damages were awarded may overrule a motion for new trial or affirm on direct or cross appeal, upon condition of an additur or remittitur, if the court finds that the damages are excessive or inadequate for the reason that the jury or trier of the facts was influenced by bias, prejudice, or passion, or that the damages awarded were contrary to the overwhelming weight of credible evidence. If such additur or remittitur be not accepted then the court may direct a new trial on damages only. [emphasis added]
Id. A finding of one of the conditions listed in the statute is a condition precedent to ordering a new trial unless a remittitur is accepted. We hold, therefore, that before the trial judge may usurp the jury's function in setting a damage award, he *370 must comply with the language of the statute and find either: 1) that the jury's verdict is so shocking to the conscience that it evinces bias, passion, and prejudice on the part of the jury; or 2) that the verdict was contrary to the overwhelming weight of the credible evidence. Absent either of these findings, the trial court abuses its discretion in ordering a new trial based upon the non-acceptance of an additur or remittitur.
In this case, the court below did not make the requisite findings to justify the order of a new trial unless a remittitur of $35,000.00 is accepted. The order merely stated that, "After weighing all the factors it is the Court's opinion that a remittitur should be granted... ." This language did not comply with the statutory requirements, and, thus, the trial court was without authority under § 11-1-55 in ordering a new trial conditioned on the refusal of the remittitur and abused its discretion in so doing. We therefore reverse the trial court's order and reinstate the jury's verdict.

II. DID THE TRIAL COURT ERR IN FAILING TO GRANT A JNOV?
The appellee has cross-appealed the trial court's failure to grant a judgment notwithstanding the verdict. As grounds for this assignment, Deas asserts that McIntosh had at least five opportunities to view the outlet, and, if he did not, should have been aware of the dangers attendant to walking in the service area.
The standard for determining the appropriateness of a judgment notwithstanding the verdict was expressed by Justice Robertson in his special concurring opinion in Jesco, Inc. v. Whitehead, 451 So.2d 706 (Miss. 1984):
Where a motion for j.n.o.v. has been made, the trial court must consider all of the evidence  not just evidence which supports the non-movant's case  in the light most favorable to the party opposed to the motion. The non-movant must also be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. If the facts and inferences so considered point so overwhelmingly in favor of the movant that reasonable men could not have arrived at a contrary verdict, granting the motion is required. On the other hand, if there is substantial evidence opposed to the motion, that is, evidence of such quality and weight that reasonable and fairminded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied and the jury's verdict allowed to stand.
Id. at 713-14. See also Bell v. City of Bay St. Louis, 467 So.2d 657 (Miss. 1985); Stubblefield v. Jesco, Inc., 464 So.2d 47 (Miss. 1984).
Using this standard, it is clear that the trial court did not err in refusing to grant a j.n.o.v. The appellee's theory is based solely on the presumption that McIntosh could have seen the outlet before he tripped over it, not that he did. The testimony was in sharp conflict as to the visibility of the hazard, and the jury was justified in believing the testimony of McIntosh and Davis that the outlets were painted the same color as the floor, and that it was only after the accident that rims were placed around them. The question of whether McIntosh had a duty to be on the lookout for hazards attendant to a tire service shop was also properly a factual issue for the jury, and they were warranted in finding that he used reasonable care. This is especially so in light of the fact that he was directed into the service area by an employee. As an invitee, McIntosh was owed a high degree of care. See Graves v. Massey, 227 Miss. 848, 87 So.2d 270 (1956). The jury was correctly instructed that Deas had a duty to remove the hazardous outlet or warn McIntosh about it, and the jury was warranted in finding Deas negligent in failing to make the service area safe. The cross-appeal is without merit.
We believe that the trial court in this case did not make the requisite findings to order a remittitur. For that reason, the judgment of the trial court will be reversed, and the jury's verdict reinstated.
*371 REVERSED AND JURY VERDICT REINSTATED.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.