598 So.2d 770 (1992)
Merline A. CARUSO
v.
PICAYUNE PIZZA HUT, INC.
No. 07-CA-59515.
Supreme Court of Mississippi.
April 22, 1992.
*771 Colette A. Oldmixon, David R. Smith, Smith Smith Tate & Cruthird, Poplarville, for appellant.
Haldon J. Kittrell, Aultman Tyner McNeese & Ruffin, Columbia, for appellee.
En Banc.
HAWKINS, Presiding Justice, for the Court:
Merline A. Caruso sued Picayune Pizza Hut, Inc., in the circuit court of Pike County for injuries alleged to have been received when she stumbled while walking over a mat in a Pizza Hut in Picayune. Following a jury verdict in favor of Pizza Hut and judgment dismissing her complaint, she has appealed. Finding there was a jury question on liability and no other error, we affirm.

FACTS
Picayune Pizza Hut, Inc., a Mississippi corporation, owned and operated a Pizza Hut in Picayune. With the exception of the area just around the salad bar, which was reddish-orange color tile, the entire dining area was covered by a green carpet. The most heavily traveled area was around the salad bar. The carpeted area was approximately one-quarter inch higher than the tiled area. A rubber covered, inch-wide metal tacking strip surrounded the carpet. The strip was tacked into the concrete, and served to hold the carpet in place.
On Friday afternoon, May 2, 1986, the restaurant manager, Gregory L. Pendleton, noticed that approximately two feet of the strip next to the salad bar area had worked loose and peeled up. Pendleton attempted to nail the strip to the floor, but was unsuccessful. The "concrete had come loose; not all the nails would go back in. So, I was able to tack it back down up to about two inches from the end which was not tacked down which was still standing up a couple of inches." He telephoned a repair service, and was told no one could come to the restaurant until the next day.
Pendleton said that the two inches of protruding strip was about an inch and a half to two inches in height, and could be a hazard to traffic. He got a commercial floor mat and placed it over the spot. The mat had rubber backing which extended about half an inch around the covering, and was, according to Pendleton, "very heavy," weighing "about four or five pounds."
Pendleton said the rug on the floor was unsightly and very obvious, but he thought he had corrected the problem insofar as presenting a hazard. Initially, he also placed a chair on the mat, but he said customers kept removing the chair, so he finally made no attempt to put the chair *772 back on the mat. The mat was in Pendleton's line of vision, and for the next two to three hours he continued to observe it and whether it caused any problems to customers. He felt that the condition was safe. Pendleton left work around five that afternoon. Customer count on Fridays was around "215 to 250" and around a hundred during lunch. Pendleton testified that customers walked over the mat "continually" with no problem at all. "It was safe. I found no problem at all." According to Pendleton, the area was "very well lit," with "Tiffany lamps all around the booths, the globe lites [sic]," and "lights recessed in the ceiling over the salad bar area."
Thomas Kent, assistant manager, came to work at five o'clock that afternoon, and Pendleton told him about the mat and why it had been placed on the floor. Kent also made an attempt to hammer the molding but without success. He said the loose strip was perhaps six inches in length. He testified that with the mat on the damaged area it was "flush with the carpet," was "flat," and "there was not" a protrusion, and "I did not see any reason to move it or lay anything else down." The mat, according to Kent, was approximately three feet by four feet in diameter, bright red with some black woven into it, with a rust-colored tile floor on one side and a green carpet on the other. Kent in turn informed the employees to watch the mat, and inform him if it created any problem to customers. In addition to Kent, there were two waitresses and a cook working that shift.
Pizza Hut's safety manual contains a statement: "Notify your manager or supervisor immediately of any unsafe condition that you cannot immediately correct." The manual also stated to "block off the floor area" until it could be repaired.
No one had any problem walking over the mat until around eight that evening when the plaintiff, Merline A. Caruso, "tripped over this little obstacle on the floor" with her right foot as she was returning from the salad bar to her table. As she tripped, she lunged forward into a chair in which a man was seated. She said that the chair kept her from falling to the floor. She did not spill her plate. When she sat down she told her husband that she had tripped, and noticed a protrusion under the "throw rug."
Mr. Caruso called a waitress and she was informed about Mrs. Caruso's tripping. Mrs. Caruso informed the waitress, "Well, I twisted, and I'm a little bit uncomfortable."
Mrs. Caruso further testified:
A. I said, "But I think you-all should make a report." And my husband and I both suggested that they should put some kind of item or article over it that could be seen, not just the throw rug, because that was on such a low level that you really didn't realize. It was more of a camouflage or to cover it up rather than to give you notice that there was something wrong.
Q. This protrusion, where was it located?
A. After I sat down and I looked back, I realized it was located at the connecting point between the carpet and the tile area. Now, I never did see what was under the throw rug. All I saw was the protrusion in the throw rug and the throw rug where it was located itself. And that's when I saw how the metal stripping ran from the other side, and that's what I assumed it to be, would be the metal stripping as to the location of the lump in the throw rug.
Q. How tall was the protrusion or the lump in the throw rug?
A. I estimated it to be about two and a half, two to two and a half inches high.
Q. And how long was this area?
A. It was about eighteen inches.
According to Mr. Caruso, under the mat there was a protrusion "anywhere from three to four inches or something like that," and he guessed "a couple of feet" in length.
Mrs. Caruso, who was employed as an assistant court clerk in Louisiana, developed neck and back problems from her accident, and filed suit against Pizza Hut.
*773 Following trial, the jury returned a verdict in favor of Pizza Hut, and Mrs. Caruso has appealed.

LAW
This case was presented to and decided by a jury. This Court has held that "except in the clearest cases" questions of negligence are for the jury. Bell v. City of Bay St. Louis, 467 So.2d 657, 664 (Miss. 1985). Of course, where the facts are disputed, negligence is a jury issue. White's Lumber & Supply Co. v. Collins, 186 Miss. 659, 192 So. 312 (1939); Glens Falls Ins. Co. of Glens Falls, N.Y. v. Linwood Elevator, 241 Miss. 400, 130 So.2d 262 (1961). And, even where the facts are undisputed, where reasonable minds may reach different conclusions, negligence is a jury issue. McIntosh v. Deas, 501 So.2d 367 (Miss. 1987); F.W. Woolworth Co. v. Stokes, 191 So.2d 411 (Miss. 1966); Gow Co. v. Hunter, 175 Miss. 896, 168 So. 264 (1936).
In the recent case of McGovern v. Scarborough, 566 So.2d 1225, 1228 (Miss. 1990), we stated:
Thus, we have repeatedly held the owner of premises:
(1) is not an insurer of the invitee's safety,
(2) has only a duty to keep the premises reasonably safe, and

(3) when not reasonably safe to warn only where there is hidden danger or peril that is not in plain and open view. (Emphasis added)
The duty of the proprietor is to "eradicate the known dangerous situation within a reasonable time or to exercise reasonable diligence in warning those who were likely to be injured because of the danger." (Emphasis added) J.C. Penney Co. v. Sumrall, 318 So.2d 829, 832 (Miss. 1975). We held in Jerry Lee's Grocery, Inc. v. Thompson, 528 So.2d 293, 295 (Miss. 1988), that the owner "owes a duty to an invitee to exercise reasonable care to keep the premises in a reasonably safe condition," and if the owner is aware of a "dangerous condition not readily apparent to the invitee, he is under a duty to warn the invitee of the condition." (Emphasis added) Also, Waller v. Dixieland Food Stores, Inc., 492 So.2d 283 (Miss. 1986); Wilson v. Allday, 487 So.2d 793 (Miss. 1986).
Moreover, as succinctly stated in 65 C.J.S. Negligence, § 2(9), pp. 472-473:
If one has acted with ordinary prudence and judgment, he is not negligent even though danger might have been avoided if he had acted in a different manner, and, hence, the doing of an act in a certain manner is not necessarily negligent merely because there may have been a safe manner of doing it; a choice of action may be mistaken and yet prudent.
The question in this case is first, whether the floor was reasonably safe after Pendleton put the mat over the loose strip, and second, if the jury found it was not then reasonably safe, was there sufficient warning given of the peril.

I.

LIABILITY
Caruso's major contention on appeal is that she was entitled to a directed verdict or at the very least a new trial on the issue of liability. Both are governed by familiar principles of this Court enunciated in numerous decisions. On a motion for a directed verdict the court "must consider the evidence in the light most favorable to the party opposed to the motion." Rester v. Morrow, 491 So.2d 204, 211-212 (Miss. 1986). A motion for a new trial is addressed to the sound discretion of the circuit judge, and may be granted when the verdict of the jury "is against the overwhelming weight of the evidence." Bobby Kitchens v. Mississippi Insurance Guar. Ass'n, 560 So.2d 129, 132 (Miss. 1989).
Viewing the evidence, as we must, favorably to Pizza Hut, we find no abuse of discretion on the part of the circuit judge in overruling the motion for a new trial, and a jury issue was clearly made on liability.
From the testimony of the two managers, Pendleton and Kent, the jury was warranted in finding that Pizza Hut took proper *774 and reasonable steps to correct any hazard caused by the loose strip and made the area reasonably safe for customers to walk over.
Pendleton noticed the condition shortly after lunch on Friday, and attempted first to nail the stripping to the floor, but being unsuccessful, called the local repair service and learned it could not be repaired until the next day. He put a heavy rubber-based mat over the loose strip and initially put a chair there. Customers, however, repeatedly replaced the chair at a table, and after walking over the mat several times, Pendleton decided that the chair was unnecessary. As an extra precaution Pendleton continued to observe the area, which was in his line of vision, for the rest of the afternoon, and whether customers encountered any difficulty in walking over the mat. The mat was under Pendleton's surveillance for the next two to three hours. The jury was warranted in concluding that a number of patrons traversed the mat, because the salad bar area was the most heavily traveled portion of the restaurant. No customer encountered any problem walking over the mat. From this two to three hour observation by Pendleton, the jury was entitled to conclude it was "reasonably safe."
Kent, who came on duty at 5:00 o'clock that afternoon, also attempted without success to nail the stripping into the tile. He replaced the mat, testified that there was no protrusion in the mat, that it was flat, and he and the waitresses nevertheless continued to periodically look and check to see if any problems were encountered by customers. Presumably more customers began arriving at the restaurant after 5:00 o'clock than during the afternoon hours. Although watching the area, Kent saw no customer having any trouble walking across the area.
Three hours later, around 8:00 o'clock, Mrs. Caruso stumbled as she walked over the mat in returning with a salad to her table. Precisely what caused Mrs. Caruso to stumble is not known. She and her husband thought it was a bulge in the mat. The mat itself, of a different color, was open and obvious. Mrs. Caruso did not fall down; she did not spill her salad.
No other customer had any difficulty walking over the mat.[1]
Whether or not these managers had taken the proper precaution to make the area reasonably safe was a jury issue; whether or not they were under a duty to place any additional warning was, at best for the plaintiff, a jury issue in this case. Pendleton and Kent had watched customers walk over this mat with no problem whatever for at least five hours.
In Mrs. Caruso's brief she first tells us that Pizza Hut's safety manual directed that "dangerous floor conditions be blocked off until such time as repairs could be made." (Appellant's Brief, p. 3) Whether this spot was in fact "dangerous" was, at most, a jury question. Next, she argues that Pendleton's correction was a "camouflaging and masking the tripping hazard," and gave the floor the "deceiving appearance of being flat and level when in fact there was a protrusion ... approximately 1 and 1/2 inches wide and 2 to 2 1/2 inches tall and approximately 18 to 24 inches in length." Kent's testimony, that it was "flat," contradicted Mr. and Mrs. Caruso's testimony of the height of the protrusion. We are further told the "lighting in the area was dim," a fact also contradicted by the restaurant manager. In any event, all these contentions were argued to the jury, for whom they were proper considerations, and the jury found in favor of Pizza Hut.
This Court manifestly cannot hold from this evidence that there was not a jury issue supporting the defense.
The cases cited by Mrs. Caruso, while enunciating well-recognized principles of law in cases such as this, are of no benefit to plaintiff. In Jerry Lee's Grocery, Inc. v. Thompson, this Court reversed a jury verdict and rendered a judgment in favor of the customer plaintiff. In all the other *775 cases cited by counsel, this Court held that it was a jury question whether or not the premises were "reasonably safe." Jerry Lee's Grocery, Inc. v. Thompson; McIntosh v. Deas; Edwards v. Cleveland Food, Inc., 437 So.2d 56 (Miss. 1983); Lewis Grocer Co. v. Williamson, 436 So.2d 1378 (Miss. 1983); F.W. Woolworth Co. v. Stokes, 191 So.2d 411 (Miss. 1966). This case is before us on a jury verdict, not a directed verdict in favor of Pizza Hut.

II.

INSTRUCTIONS
Mrs. Caruso was given an all encompassing instruction on the issue of liability.[2]
Pizza Hut was given the following instructions:
INSTRUCTION NO. D-22
The Court instructs the Jury that if you should find that the Defendant was guilty of negligence in the maintenance of the premises in question, and if you also should find from a preponderance of the evidence, that Merline A. Caruso, in her conduct, was also guilty of negligence and that such negligence contributed to the accident, then the Court instructs you that any damages which you believe the Plaintiff has sustained and suffered shall be diminished in proportion to the amount of negligence which you attribute to the Plaintiff.
INSTRUCTION NO. D-19
The Court instructs the Jury that, if you believe from the evidence, on that May 2, 1986, the Defendant in this case used reasonable care in maintaining its premises, used reasonable care in investigating and correcting any hazardous conditions made known to it, and could not anticipate or foresee the type of accident complained of by the Plaintiff in this *776 case, or that the type of accident sustained by the Plaintiff in this case was an improbable result, then your verdict shall be in favor of the Defendant.

A.

D-22 ERROR
The sole complaint under this assignment of error about D-22 is that it failed to give the jury the facts which constituted negligence, and that in not giving the jury the facts necessary to constitute negligence, it was "erroneous, misleading, and contrary to the law of the State of Mississippi." Instructions, however, are read as a whole, and whatever specificity Pizza Hut's instruction may have lacked, plaintiff's counsel had the opportunity to, and did in fact supply it in Mrs. Caruso's instruction. This Court does not look at just one instruction, but considers them all to determine whether the jury was fairly instructed. Purina Mills, Inc. v. Moak, 575 So.2d 993 (Miss. 1990); Rester v. Lott, 566 So.2d 1266 (Miss. 1990); Payne v. Rain Forest Nurseries, Inc., 540 So.2d 35 (Miss. 1989); Detroit Marine Engineering v. McRee, 510 So.2d 462 (Miss. 1987); Woolfolk v. Tucker, 485 So.2d 1039 (Miss. 1986).

B.

D-19 ERROR
This one-page assignment of error (including quoting instruction in full) criticizes D-19 solely because Mrs. Caruso's accident was foreseeable as a matter of law and Pizza Hut was not entitled to any instruction on foreseeability. "Plaintiff's stumbling over the camflauged [sic] defect in the floor surface was a reasonably foreseeable event." The assignment concludes, "Therefore, to instruct the jury that the Plaintiff's accident was such as could not be reasonably anticipated or foreseen or was such as to be improbable constitutes reversible error."
Mrs. Caruso did not see fit to cite any authority to support this assignment.[3]
As Pizza Hut reminds us, we feel no compunction to address an assignment of error where counsel has not seen fit to cite any authority to support it. R.C. Petroleum, Inc. v. Hernandez, 555 So.2d 1017, 1023 (Miss. 1990); Kelly v. State, 553 So.2d 517, 521 (Miss. 1989); Fluor Corp. v. Cook, 551 So.2d 897, 900 (Miss. 1989).

C.
In this case the circuit judge in C-1 instructed the jury:
You are not to single out one instruction alone as stating the law, but you must consider these instructions as a whole. Neither the manner in which the instructions are given, nor the number of instructions on any given proposition, is of any significance in determining the relative importance of such instructions.
Submitting confusing instructions to the circuit judge is not confined to defense counsel; plaintiffs' counsel likewise occasionally make the same error. In the recent case of Motorola Com. & Electronics v. Wilkerson, 555 So.2d 713, 722 (Miss. 1989), we held that an admittedly confusing *777 instruction did not require reversal when considered with others that did correctly state the law, coupled with the circuit judge's instruction that the jury was not to "single out one instruction alone as stating the law, but you must consider these instructions as a whole."
The instructions in this case as a whole correctly stated the law, and the negligence, if any, on the part of Pizza Hut was a jury question. We accordingly affirm.
AFFIRMED.
ROY NOBLE LEE, C.J., and PRATHER, ROBERTSON and PITTMAN, JJ., concur.
DAN M. LEE, P.J., concurs in result only.
McRAE, J., dissents with separate written opinion joined by SULLIVAN and BANKS, JJ.
McRAE, Justice, dissenting:
In this case, the majority has ignored its holding in Munford, Inc. v. Fleming, 597 So.2d 1282 (Miss. 1992), and reached a result inconsistent with that decision. Accordingly, I dissent from the majority opinion for the following reasons.
Pizza Hut had actual notice that a hazardous condition existed. Management had contacted a repairman to fix the protruding carpet strip. Knowing that repairs could not be made until the next day, attempts were made to temporarily remedy the problem by covering it up with a woven mat. Despite the good intentions of management, the hazard was compounded by making it less obvious to unsuspecting patrons.
In Munford, we cited our well-established standard of the duty of care owed by a proprietor of a business to its customers as follows:
[t]he owner or operator of a business premises owes a duty to an invitee to exercise reasonable care to keep the premises in a reasonably safe condition, and if the operator is aware of a dangerous condition which is not readily apparent to the invitee, he is under a duty to warn the invitee of such condition. (citations omitted) (emphasis added)
Jerry Lee's Grocery, Inc. v. Thompson, 528 So.2d 293 (Miss. 1988).
The record indicates that Pizza Hut's safety policy mandated that damaged floor areas be barricaded until repairs could be made. Although a chair was placed over the hazardous spot, customers kept moving it. Management was aware that its altogether inadequate efforts to warn were thus thwarted. As shift changes were made, employees were verbally warned of the condition; yet no subsequent measures, such as a more obvious barricade, a sign, or cautionary instructions from waitresses, were taken to warn customers of the dangerous condition. Accordingly, because Pizza Hut was aware of a hazard which its efforts to correct served only to conceal and exacerbate, and took no further precautionary steps after its initial inadequate attempts to warn customers proved futile, there was a clear breach of duty. Based on the facts of the case, and consistent with our affirmation of the jury verdict in Munford, Mrs. Caruso was entitled to a judgment notwithstanding the verdict.
While I join in admonishing counsel for failing to cite any authority in support of Caruso's assignment of error, I disagree with the majority's perfunctory dismissal of Mrs. Caruso's assertion that the Circuit Court erred in granting Instruction D-19, which reads as follows:
The Court instructs the Jury that, if you believe from the evidence, on that [sic] May 2, 1986, the Defendant in this case used reasonable care in maintaining its premises, used reasonable care in investigating and correcting any hazardous condition made known to it, and could not anticipate or foresee the type of accident complained of by the Plaintiff in this case, or that the type of accident sustained by the Plaintiff in this case [sic], or that the type of accident sustained by the Plaintiff in this case was an improbable result, then your verdict shall be in favor of the Defendant.
For a jury instruction properly to be given, there must be an evidentiary basis for *778 it Munford, 597 So.2d at 1286; Rester v. Lott, 566 So.2d 1266, 1269 (Miss. 1990). Contrary to Instruction D-19 as given to the jury, there is substantial evidence in the record indicating that the Pizza Hut Manager and his employees were concerned that customers en route to the salad bar could trip and fall over the floor hazard. There was no question, therefore, that the type of accident which occurred was anticipated, foreseeable and probable. This instruction, tantamount to a request for a directed verdict for the Defendant, served only to confuse and mislead the jury. Accordingly, the Circuit Court erred in granting the instruction and, in the alternative, Mrs. Caruso's motion for a new trial should have been granted.
Accordingly, I respectfully dissent, finding that Mrs. Caruso was entitled to a judgment notwithstanding the verdict, or in the alternative, a new trial.
SULLIVAN and BANKS, JJ., join this opinion.
NOTES
[1] Both Pendleton and Kent testified Mrs. Caruso was the only person who stumbled on the mat. There was ample pretrial discovery, and had there been other customers who encountered difficulty, alert trial counsel would have brought this to the jury's attention.
[2] Mrs. Caruso's granted instruction reads in full:

The Court instructs the jury that "negligence" is the failure to use reasonable care. Reasonable care is that degree of care which a reasonably careful person would use under like circumstances. Negligence may consist either in doing something that a reasonably careful person would not do under like circumstances, or in failing to do something that a reasonably careful person would do under like circumstances.
Negligence is a proximate cause of damage if it directly and in the natural and continuous sequence produces, or contributes substantially to producing such damage, so it can reasonably be said that, except for the negligence, the loss, injury or damage would not have occurred.
The Court instructs the jury that the Plaintiff, Merline A. Caruso, was a business invitee of the Defendant, Picayune Pizza Hut, Inc.[,] at its restaurant premises located on Highway 43 South in Picayune, Mississippi. Under the laws of the State of Mississippi, the Defendant, Picayune Pizza Hut, Inc., and its employees owed the Plaintiff, Merline A. Caruso, the duty of exercising ordinary and reasonable care to see that the premises of its restaurant, including the floor, is reasonably safe for use by the Plaintiff and others.
Under the laws of the State of Mississippi, Defendant, Picayune Pizza Hut, Inc.[,] has [a] duty to avoid the creation of an unreasonably dangerous condition in an area where the Plaintiff has every right to be, or, if an unreasonably dangerous condition exists, to exercise ordinary and and [sic] reasonable care to correct the unreasonably dangerous condition and/or to warn of the unreasonably dangerous condition.
The Court instructs the jury that if you find from a preponderance of the evidence, that on May 2, 1986, prior to the Plaintiff entering on the Defendant's restaurant premises in Picayune, Mississippi, the Defendant's employees knew that the metal strip tying the carpet and the tile sections of the floor in the area of the salad bar was loose and elevated and created an unreasonably dangerous condition to those using the restaurant premises and, more particularly, the salad bar; and
If you further believe from a preponderance of the evidence herein that the Defendant's employees failed to exercise reasonable care to correct the unreasonably dangerous condition, if any, created by the elevated and loose metal strip and that the Defendant failed to warn customers, including the Plaintiff, of the existence of the loose and elevated metal strip, then the Defendant is guilty of negligence.
If you further believe from a preponderance of the evidence in this case that such negligence, if any, of the Defendant proximately caused or proximately contributed to the Plaintiff, Merline A. Caruso, tripping and losing her balance, and to the injuries and damages, if any suffered by the Plaintiff, then it is your sworn duty to find for the Plaintiff and to assess her damages, if any, according to other instructions.
[3] Pizza Hut in its brief called our attention to the well-recognized rule that this Court is under no obligation to consider any assignment of error in which no legal authority is cited. R & S Development, Inc. v. Wilson, 534 So.2d 1008, 1015 (Miss. 1988); Deveraux v. Deveraux, 493 So.2d 1310, 1314 (Miss. 1986).

Mrs. Caruso's reply brief tells us that the authority needed to support this assignment is "enumerated" in B and C of the Appellant's Brief and incorporated the same by reference in her arguments."
She then states:
The facts in this case do not support the granting of No. D-19 and the trial court's error in giving the erroneous instruction only served to confuse and mislead the jury, constituting reversible error. E.g., Bell v. City of Bay St. Louis; Allen v. Blanks; Griffin v. Fletcher; Allen v. Ritter."
Allen v. Blanks, 384 So.2d 63 (Miss. 1980); Griffin v. Fletcher, 362 So.2d 594 (Miss. 1978); and Allen v. Ritter, 235 So.2d 253 (Miss. 1970), were not cited in the appellant's original brief. None deals with the injuries sustained by an invitee, and all involve factual situations totally dissimilar to this case. Moreover, all involve jury questions on negligence. Mrs. Caruso fails to tell us how Bell v. City of Bay St. Louis supports her argument under D-19.